## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANDREW LOCKETT**                                      **CIVIL ACTION**

**VERSUS**                                                      **NO. 11-804**

**MARLIN GUSMAN, SHERIFF, ET AL.**              **SECTION "C" (1)**

## ORDER AND REASONS

Plaintiff, Andrew Lockett, filed this *pro se* civil action against Orleans Parish Sheriff Marlin

Gusman and the Orleans Parish Prison pursuant to 42 U.S.C. § 1983.  That statute, in pertinent part,

provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

In the complaint, plaintiff states his claim as follows:

January 25, 2011 Petitioner entered OPP with a broken leg and paralyzed from the
waiste down.  Petitioner could not use the toilet without assistance of his cellmate.
On Wednesday February ?, 2011 while being helped from his wheelchair his broken
leg hit the metal rail of his bed.  Petitioner leg appeared to be rebroke because his

foot hung to one side.  The following day he was transferred to Tent #1 without any medical attention.[1]

The defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and, alternatively, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 .[2]  Plaintiff was ordered to file an opposition to that motion,[3] but he has failed to do so.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[4]

## I.  Applicable Legal Standards

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted).  Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted.  In ruling on a 12(b)(6) motion,

> [t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

---

[1]   Rec. Doc. 1, p. 3.

[2]   Rec. Doc. 16.

[3]   Rec. Doc. 18.

[4]   Rec. Doc. 14.

*In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Rule 56, on the other hand, allows a court to dispose of an otherwise cognizable claim if the claim is shown to be "factually unsupported."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Therefore, in reviewing a motion for summary judgment, a court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting

3

Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  A court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather,  "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II.  Improper Defendants

The defendants first argue that plaintiff has failed to state a proper claim against them.  They are correct for the following reasons.

### A.  Orleans Parish Sheriff Marlin Gusman

Plaintiff named Orleans Parish Sheriff Marlin Gusman as a defendant in this lawsuit. Plaintiff does not indicate whether Gusman is being sued in his official capacity, his individual capacity, or both.  However, regardless of plaintiff's intent, no claim has been properly stated against Gusman in any capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, an official-capacity claim against Gusman would in reality be a claim against the local governmental body itself.  Glasper v. Guzman, Civ. Action No. 06-2040, 2009 WL 1507568, at *6 (E.D. La. May 27, 2009); Stewart v. Criminal District Court of Louisiana, Civ.

Action No. 08-3731, 2008 WL 4758610, at *3 (E.D. La. Oct. 30, 2008).  The United States Fifth

Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.  To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation

marks, brackets, and citations omitted).  Further, "[a] plaintiff may not infer a policy merely because

harm resulted from some interaction with a governmental entity."  Colle v. Brazos County, Texas,

981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL

5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must *identify* the policy or custom which

allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura,

76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir.

2003); Wetzel, 2009 WL 5125465, at *3.  In the instant case, plaintiff does not allege that his

constitutional rights were violated as a result of a policy or custom, much less identify such a policy

or custom.  Therefore, no official-capacity claim has been properly stated against Gusman.

Plaintiff has likewise failed to state a proper individual-capacity claim against Gusman.

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct

giving rise to a constitutional violation.  This standard requires more than conclusory assertions:

The plaintiff must allege specific facts giving rise to the constitutional claims."  Oliver v. Scott, 276

F.3d 736, 741 (5th Cir. 2002) (citation omitted).  Additionally, "[p]ersonal involvement is an

essential element of a civil rights cause of action." <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff neither makes any factual allegations against Gusman nor claims that he was in any way personally involved in the incidents giving rise to this lawsuit. Further, Gusman may not be held liable pursuant to § 1983 under any theory of strict liability[5] or vicarious liability[6] for federal civil rights violations allegedly committed by his subordinates.

## B. Orleans Parish Prison

Plaintiff also named the Orleans Parish Prison as a defendant. However, that, too, is improper because the prison is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983. <u>Bolden v. Orleans Parish Jail</u>, Civ. Action No. 08-0728, 2009 WL 507045, at *2 (E.D. La. Feb. 26, 2009); <u>Glenn v. Louisiana</u>, Civ. Action No. 08-4817, 2009 WL 382680, at *2 (E.D. La. Feb. 11, 2009); <u>Smith v. Orleans Parish Prison</u>, Civ. Action No. 08-3786, 2008 WL 2951279, at *1 n.3 (E.D. La. July 25, 2008); <u>Francis v. United States</u>, Civ. Action No. 07-1991, 2007 WL 2332322, at *2 & n.4 (E.D. La. Aug. 13, 2007); <u>see also</u> <u>Cullen v. DuPage County</u>, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Correctional Facility Administration</u>, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); <u>Powell v. Cook County Jail</u>, 814 F.Supp. 757, 758 (N.D. Ill. 1993); <u>Brooks v. Pembroke City Jail</u>, 722

---

[5]  <u>Harris v. Greer</u>, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); <u>see also</u> <u>Jenkins v. Wood</u>, 81 F.3d 988, 994 (10th Cir. 1996); <u>Evans v. Gusman</u>, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); <u>Castillo v. Blanco</u>, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[6]  <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." ); <u>see also</u> <u>Oliver</u>, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability."); <u>Evans</u>, 2008 WL 2223281, at *2.

F.Supp. 1294, 1301 (E.D.N.C. 1989); <u>Mitchell v. Chester County Farms Prison</u>, 426 F.Supp. 271, 274 (E.D. Pa. 1976).

<u>III.  Plaintiff's Claim</u>

The defendants alternatively argue that, even if plaintiff had named a proper defendant, his underlying claim for inadequate medical care would still be subject to dismissal as factually unsupported.  Again, the defendants are correct.

Before analyzing the particulars of plaintiff's claims, the Court initially notes what the federal constitution does *not* require with respect to the medical care of inmates.

First, the federal constitution does not require that inmates receive optimal care.  The fact that an inmate's medical treatment "may not have been the best money could buy" is simply insufficient to establish a federal violation.  <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992); <u>see also</u> <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir. 2006); <u>McMahon v. Beard</u>, 583 F.2d 172, 174 (5th Cir. 1978).

Second, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice.  <u>Hall v. Thomas</u>, 190 F.3d 693, 697-98 (5th Cir. 1999); <u>see also</u> <u>Kelly v. Gusman</u>, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); <u>Cerna v. Texas Tech Medical Staff</u>, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976); <u>Cerna</u>, 2004 WL 42602, at *2.

On the contrary, an inmate's federal constitutional right to medical care is extremely limited. Specifically, the federal constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, are violated only if his serious medical needs are met with *deliberate indifference* on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). On that point, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In their motion, the defendants argue that plaintiff's medical records disprove any allegation of deliberate indifference. Those records do in fact reflect that plaintiff received repeated medical attention for his broken leg. For example:

- During the Medical Intake Screening performed on January 25, 2011, a jail nurse noted that plaintiff's leg had been broken on December 25, 2010.[7]

---

[7] Rec. Doc. 16-4, p. 9.

- On January 31, 2011, a jail nurse ordered an x-ray for February 2, 2011, and scheduled an appointment for a jail doctor to review the x-ray results on February 4, 2011.[8]

- On February 2, 2011, the x-ray was taken and was found to be abnormal, revealing a fracture.[9]

- On February 8, 2011, a jail doctor noted that the x-ray was abnormal and scheduled plaintiff for a follow-up visit on February 10, 2011.[10]

- On February 10, 2011, plaintiff was seen in the medical department and a standard health assessment was completed.  The assessment noted that plaintiff had a fractured leg but reported that he felt "OK."[11]

- On February 22, 2011, plaintiff submitted a grievance in which he stated that he had reinjured his leg and requested to see a doctor.[12]

- On March 2, 2011, plaintiff was seen by the jail's nurse practitioner for various complaints.  His leg fracture was noted, as were the facts that he was

---

[8]   Rec. Doc. 16-4, p. 16.

[9]   Rec. Doc. 16-4, p. 24.

[10]   Rec. Doc. 16-4, p. 15.

[11]   Rec. Doc. 16-4, pp. 3-8.

[12]   Rec. Doc. 16-5, p. 5.

in no apparent distress, was using a wheelchair, and had a "hard splint" for his leg.[13]

• On March 3, 2011, the jail's nurse practitioner requested an appointment for plaintiff with a LSU Health System orthopedic specialist.[14]  Ultimately, however, plaintiff was released from custody before an appointment could be secured.

• On March 7, 2011, a jail doctor responded to plaintiff's February 22 grievance, stating:  "YOU HAVE BEEN EVALUATED BY A MEDICAL PROVIDER AND YOU ARE CURRENTLY IN THE PROCESS OF HAVING YOUR SPECIALTY APPOINTMENT SCHEDULED BY MCLNO'S SCHEDULING OFFICE.  MOREOVER, YOU HAVE A FOLLOW-UP APPOINTMENT PENDING.  SHOULD YOU NEED MEDICAL CARE BEFORE IS DUE, PLEASE COMPLETE A SICK CALL REQUEST FORM."[15]

Clearly, those medical records show that plaintiff was not refused treatment, his medical complaints were not ignored, and he was not intentionally treated incorrectly.  The records instead reflect that he was repeatedly seen by the jail's medical staff, provided with diagnostic tests and medical equipment, and even referred to an outside specialist.  Accordingly, the records disprove

---

[13]   Rec. Doc. 16-4, p. 14.

[14]   Rec. Doc. 16-4, p. 29.

[15]   Rec. Doc. 16-5, p. 8.

any allegation that his medical needs were met with deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

The Court also notes that, although plaintiff was dissatisfied with his medical treatment, that does not make his claims actionable. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Further, this case clearly involves matters of professional medical judgment. Such matters are generally better left to the medical expertise of physicians rather than to the legal expertise of judges, and, therefore, federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). Based on the evidence showing that plaintiff received continued medical care, as well as on the complete absence of contrary evidence, there is no basis whatsoever to engage in such second-guessing in the instant case.

In summary, the determinative issue here is not whether the medical treatment plaintiff received was subpar in some respect or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*. Because it is evident that there was no deliberate indifference in this case, plaintiff's underlying claim fails as a matter of law.

11

Accordingly,

**IT IS ORDERED** that the defendants' unopposed motion, Rec. Doc. 16, is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this third day of October, 2011.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**